9

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAY 2 8 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Respondent–Plaintiff | § | |
| | § | |
| vs. | § | CA B–01–187 |
| | § | |
| JUAN HERNANDEZ EGUIA, | § | |
| Petitioner–Defendant | § | |
| ( CR B–00–169) | § | |

## GOVERNMENT'S ANSWER, MOTION FOR DISMISSAL UNDER 8(a) OF THE RULES FOLL. 28 U.S.C. § 2255, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

I.

The Court ordered the Government to respond to Petitioner's, Juan Hernandez Eguia (hereinafter referred to as Eguia) 28 U.S.C. §2255 motion filed on November 9, 2001, by March 6, 2002.  The Government sought and obtained an extension until May 30, 2002, due to the non-receipt of the re-arraignment transcript ordered produced by the Court. The Government moves to dismiss and, in the alternative, moves for summary judgment.

II.

On April 25, 2000, Eguia was charged by indictment in the Southern District of Texas, Brownsville Division, with possession of a firearm by a convicted felon, in violation Title 18 U.S.C. §§1922(g)(1) and 924(a)(2).  He pled guilty to the indictment on August 3, 2000, pursuant to a plea agreement with the government, before the United States District Judge Hilda G. Tagle (R. 22; PSR 2).  The plea

agreement called for the government to recommend Eguia receive "full credit for acceptance of responsibility" and a "sentence at the low end of the applicable Sentencing Guideline level range".

The probation department scored the instant offense at base offense level 24, and recommended that he receive a three-level downward adjustment for timely acceptance of responsibility under U.S.S.G. §3E1.1(a, b) for a total offense level score of twenty-one (21). His criminal history placed him in criminal history category V (PSR 32). Eguia did not object to the PSR.

On November 13, 2000, at sentencing, the district court adopted the PSR as written, and sentenced Eguia to seventy-eight (78) months imprisonment, to be followed by a three-year term of Supervised Release for the instant offense. He was also ordered to pay $100.00 in mandatory costs. The judgment was entered November 21, 2000.

Eguia did not directly appeal his conviction or sentence. On November 9, 2001, Eguia filed the instant motion.

III.

The instant pleading is timely.

IV.

The Government denies each and every allegation of fact made by Eguia except those supported by the record and those specifically admitted herein, and demands strict proof thereof.

2

V.

ALLEGATIONS

Eguia alleges his constitutional rights were violated due to ineffective assistance of counsel and a due process violation.

a.    His trial counsel was ineffective in several manners:

1.    Failing to visit Eguia in jail; to discuss the PSR.; to investigate the findings set out in the PSR, particularly his prior convictions; and to object to incorrect findings within the PSR relating to Eguia's prior convictions.

2.    Failing to "enforce" the plea agreement, to which the parties had agreed, and which called for a maximum sentence of twenty (20) months imprisonment, upon the district court at sentencing.

b.    The court's failure to go along with the plea agreement resulted in Eguia's plea being involuntary and a violation of "Due Process".

VI.

EGUIA'S BURDEN

Eguia' first hurdle is that of "cause and prejudice". *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584 (1982)(holding "plain error" incorrect standard for

3

§2255and requiring "cause and prejudice" standard). Eguia must first show cause that would excuse his failure to raise this claim on direct appeal and actual prejudice from the error that he now alleges. The motion should be denied and dismissed under Rule 8(a) of the rules foll. 28 U.S.C. §2255 inasmuch as he offers insufficient cause and prejudice for obtaining review on collateral attack. *See, e.g.,* *United States v. Shaid*, 937 F.2d 228, 231–232 and n.7 (5th Cir. 1991) (en banc) (constitutional or jurisdictional issue reviewable for first time on collateral attack only if the movant demonstrates cause for his procedural default and actual resulting prejudice or that the uncorrected error would result in a complete miscarriage of justice).

An allegation of "miscarriage of justice" warrants collateral review where a constitutional violation has alleged to have caused the conviction of one innocent of the crime. *McCleskey v. Zant*, 499 U.S. 467, 495, 111 S.Ct. 1454, 1470 (1991); *Murray v. Carrier*, 477 U.S. 478, 485, 106 S.Ct. 2639, 2643 (1986). "The 'cause' standard requires [the movant] to show that 'some objective factor external to the defense' prevented him from raising on direct appeal the claim he now advances." *United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996) (quoting *Romero v. Collins*, 961 F.2d 1181, 1183 [5th Cir. 1992] which in turn quotes *Murray*, 477 U.S. at 488, 106 S.Ct. at 2645). "Objective factors that constitute cause include: (1) interference by officials that makes compliance with the procedural rule impracticable; (2) a showing that the factual or legal basis for the claim was not

4

reasonably available to [the Petitioner] at the prior occasion; and (3) ineffective assistance of counsel in the constitutional sense." *Id.* The "cause" proffered by Eguia was his claimed ignorance of his "rights" and "ineffective assistance" of counsel.  Eguia's claimed ignorance of the law fails to sustain Eguia's burden to demonstrate cause for failure to bring the issue on direct appeal.  "Ineffective assistance", if demonstrated, may satisfy the "cause" prong of his burden.  Eguia argues  that his attorney should have investigated and discovered that his prior convictions, as stated in the PSR, were incorrectly stated.  Eguia does not allege which of his prior convictions are "incorrect" or how they're incorrect.  In fact, at sentencing, counsel for Eguia, in Eguia's presence, advised the district court that "[W]e reviewed the presentence report together and there are no objections" (Sentencing Transcript p. 2). Eguia does not allege that his counsel was ineffective for failing to file notice of appeal or for failing to directly appeal on the instant issues.

Eguia alleges that he suffered "prejudice" as a result, in that: (1) PSR's rendition of his prior convictions were incorrect and therefore resulted in a sentence greater than that to which he should have been exposed; (2) further, (inferentially) that he would not have plead guilty had he known that the district court was not bound by the plea agreement; (3) and finally, that the district court's failure to comply with the plea agreement's sentence recommendation rendered

5

his plea involuntary. As discussed later, the factual premises underlying Eguia's complaints is belied by the record thus precluding any potential prejudice to Eguia.

To avoid the consequences of a dismissal by applying the fundamental-miscarriage-of-justice exception to Rule 9(b) foll. 28 U.S.C. §2255, a movant must demonstrate, as a factual matter, that he did not commit the crime of conviction. *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 861, 867 (1995); *Ward v. Cain*, 53 F.3d 106, 107 (5th Cir. 1995) (citing *Schlup*). Stated differently, the movant must demonstrate that the failure to consider his claim will result in his continued incarceration though innocent. *See Saahir v. Collins*, 956 F.2d 115, 120 (5th Cir. 1992); *United States v. Espinoza*, 82 F.3d 640, 642 (5th Cir.1996) (citing *Saahir*). Eguia does not allege he is innocent. He, therefore, fails the "prejudice" prong of his "cause and prejudice" burden.

A.    INEFFECTIVE ASSISTANCE TO SATISFY THE "CAUSE" PRONG

1. Legal Principles Governing Ineffective Assistance.

Ineffective assistance of counsel claims are generally reviewed under the now well-established *Strickland* standard:  "Whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064 (1984); *Roe v. Flores-Ortega*, 528 U.S. 470, 471, 120 S.Ct. 1029, 1034 (2000). To succeed on such a claim, a petitioner must first show that his counsel's performance fell below an objective standard of

reasonableness. *Id.* at 688, 104 S.Ct. at 1064. The reasonableness of counsel's challenged conduct must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct" and the reviewing court "must strongly presume that counsel has exercised reasonable professional conduct." *United States v. Samples,* 897 F.2d 193, 196 (5th Cir. 1990)(citations omitted).

In order to succeed on this claim, Eguia must establish that trial counsel's actions, "fell below an objective standard or reasonableness" and that 'but for' such unprofessional errors the outcome would have been different. *United States v. Samples*, 897 F.2d at 196. Eguia fails in both regards.

To prevail on his claims, Eguia must identify the acts or omissions that are outside the wide range of professionally competent assistance and then demonstrate that but for counsel's unprofessional errors the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. A reviewing court must endeavor to eliminate the distorting effects of hindsight and evaluate the facts from counsel's perspective at the time of trial. To this end, the court will indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance. *Id.* "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable". *Id.* at 690.

The burden falls on the accused to prove a violation of constitutional standards. The focus is on the attorney's impact on the adversarial process; the

constitutional standards may be met irrespective of an accused's evaluation. *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039 (1984).

### a. At the plea stage.

"Effective assistance" requires counsel to provide meaningful advice on the facts and law applicable to a plea agreement. *United States v. Hodges*, 259 F.3d 655, 659 (7th Cir. 2001); *United States v. French*, 719 F.2d 387, 389 (11th Cir. 1983). "While it need not be errorless, counsel's advice must be within the realm of competence demanded of attorneys representing criminal defendants". *Jones v. White*, 992 F.2d 1548, 1557 (11th Cir. 1993). In the context of a guilty plea, Eguia must demonstrate that, but for counsel's errors, he would not have plead guilty and would have gone to trial. *Id.* citing *Hill*, 474 U.S. at 59.

### b. Sentencing errors

In the context of sentencing errors, the petitioner must show that he was prejudiced by counsel's ineffective assistance. The prejudice prong, however, is more than just an outcome determinative test; it requires the petitioner to demonstrate that the result of the proceeding was fundamentally unfair or unreliable. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 843–844 (1993); *Goodwin v. Johnson*, 132 F.3d 162, 174 (5th Cir. 1997).

8

Even if Eguia demonstrates that his counsel provided constitutionally infirm representation, Eguia must also demonstrate prejudice. Although Eguia need not demonstrate that, absent the error, his sentence would have been "significantly less harsh", he must demonstrate prejudice. "Authority does not suggest that a minimal amount of additional time in prison cannot constitute prejudice. Quite to the contrary, our jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance". *Glover v. U.S.* 531 U.S. 198, 203, 121 S.Ct. 696, 700 (2001).

B.    EGUIA'S INEFFECTIVE ASSISTANCE CLAIMS

Eguia's "ineffective assistance" claims are premised on several unsupported or incorrect claims.

1.    Incorrect Criminal History Findings in PSR.

Eguia does not meet his burden of specifying which of his criminal convictions were incorrectly reported in the PSR. Even if Eguia demonstrates the PSR was in error in this regard, Eguia must demonstrate he was prejudiced by such error. Eguia neither alleges nor demonstrates actual prejudice at the trial level, he fails to demonstrate that his counsel's "failure" to raise the issue at the trial level was "objectively unreasonable". As he fails to demonstrate that the issue represented a viable defensive issue, he necessarily fails the "ineffective assistance" prejudice prong as well.

2.    Failure to enforce the plea agreement recommendation of 16-20 months imprisonment.

9

Eguia's allegation is founded on several false factual premises. Eguia's plea agreement clearly notes it is not binding upon the court pursuant to Rule 11(e)(1)(B) of the FEDERAL RULES of CRIMINAL PROCEDURE (R. 22). Even were the agreement binding, the agreement only "requires" that: "the Government will recommend the Defendant be given the full credit for acceptance of responsibility, and be sentenced to the low end of the Guideline level he scores" (PSR 2; R. 22). Such recommendation was made and noted in the PSR.

As the premises upon which Eguia's instant complaint is based has no factual or legal support, Eguia's counsel's performance can not be shown to be deficient under *Strickland*. As Eguia has failed to demonstrate that the PSR was incorrect or that he suffered any prejudice, he can show neither "cause" nor "prejudice" by his attorney's "failure" to take such action. Further, Eguia does not allege he is innocent. He, therefore, fails the 'miscarriage of justice' test.

VII.

### SUBSTANTIVE CLAIMS

A.  Substantive involuntary plea claim

1.  Legal Principles Governing Involuntary Plea.

Eguia alleges his plea of guilty was involuntary. Eguia inferentially claims that, had he known that the district court was not bound by the plea agreement's recommendation of a maximum sentence of twenty months, he would not have plead guilty.

10

"A guilty plea will be upheld on habeas review if entered into knowingly, voluntarily, and intelligently." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000), *cert. denied*, 532 U.S. 1027, 121 S.Ct. 2220 (U.S. Jun 4, 2001). The terms "voluntary" and "knowing" are frequently used interchangeably, although, strictly speaking, the terms embody different concepts. Compare 1A Charles Alan Wright, FEDERAL PRACTICE and PROCEDURE §172, 142–44 (3d ed.1999)(stating a plea of guilty is not voluntary if it is induced by threats, misrepresentation, unfulfilled promises, or promises of an improper nature), with Id. §173, 171–73(stating that a plea is not knowing unless, among other things, defendant understands "what the maximum possible penalty is, including any potential fine and the effect of any special parole or supervised release term"). *United States v. Hernandez*, 234 F.3d 252, 254–255 (5th Cir. 2000). To be knowing and intelligent, the defendant must have "a full understanding of what the plea connotes and of its consequence." See *Boykin v. Alabama*, 395 U.S. 238, 244, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The defendant need only understand the direct consequences of the plea; he need not be made aware of every consequence that, absent a plea of guilty, would not otherwise occur. See *Trujillo v. United States*, 377 F.2d 266, 266 (5th Cir. 1967), *cert. denied*, 389 U.S. 899, 88 S.Ct. 224, 19 L.Ed.2d 221 (1967).

First of all, Eguia misconstrues the provisions of the plea agreement. The plea agreement does not state that the government will recommend a sentence of between 16–20 months. The plea agreement only calls for a recommendation

11

from the government that he be sentenced at the "lower end of the guideline level he scores". (Re-arraignment Transcript p. 12). During the plea proceedings, counsel for Eguia confirmed that the agreement stated in the record at the re-arraignment was the same that he conveyed to Eguia (Re-arraignment Transcript p. 12). The U.S. district court cautioned Eguia that the plea agreement was not binding upon the court. Eguia confirmed under oath that he understood the written agreement represented the totality of his agreement, and was not binding upon the court (Re-arraignment Transcript p. 13). The district court explained the PSR procedure, and that his Guideline score would be determined at a later date. The district court further cautioned Eguia, and Eguia acknowledged, that even if the district court declined to follow the sentencing recommendation, Eguia would not be able to withdraw his plea of guilty (Re-arraignment Transcript p. 12). The district court found Eguia fully understood the charges against him, the consequences of his plea and that his plea was made freely and voluntarily (Re-arraignment Transcript p. 21). The record, thus, demonstrates that Eguia entered his plea voluntarily and that his contention that his plea was not voluntary does not entitle him to §2255 relief. *United States v. Drummond*, 910 F.2d 284, 285-286 (5th Cir. 1990)(although no 'direct' evidence on point, record contained 'conclusive' evidence that plea was voluntary obviating need for hearing); See *Diggs v. United States*, 447 F.2d 460 (5th Cir. 1971).

12

Again Eguia's claim is premised upon a false belief. Eguia's plea agreement did not provide for a recommended sentence of between 16–20 months, nor was the agreement binding upon the district court. As such, misperceptions forms the sole basis for Eguia's claim his plea was involuntary, such claim fails.

A Section 2255 Motion requires a hearing unless the files, the motion, and the record of the case conclusively show that no relief is appropriate. 28 U.S.C. § 2255 (foll.), Rule 8(a). *United States v. Santora*, 711 F.2d 41 (5th Cir. 1983). The need for an evidentiary hearing depends upon an assessment of the record. If the district court cannot resolve the allegations without examining evidence beyond the record, it must hold a hearing. If the record is adequate to fairly dispose of the allegations, the court need inquire no further. *United States v. Smith*, 915 F.2d 959, 964 (5th Cir. 1990).

Although the allegations of a *pro se* complaint are held to a less stringent standard than the formal pleading drafted by lawyers, if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief, the cause will be dismissed. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594 (1972). The instant cause does not merit a hearing.

The government prays that the court enter an order dismissing Civil Case No. B–01–187.

VIII.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the Government respectfully prays that Eguia's §2255 petition be dismissed, or in the alternative, subject to denial by summary judgment.

Respectfully submitted,

MICHAEL T. SHELBY
United States Attorney

Mark M. Dowd
Assistant U.S. Attorney
600 E. Harrison, # 201
Brownsville, Texas 78520
Texas Bar No. 06070500
Federal I.D. No. 9314
(956) 548-2554/Fax (956) 548-2549

## CERTIFICATE OF SERVICE

I, Mark M. Dowd, Assistant United States Attorney, certify that a true and correct copy of the Government's Answer, Motion for Dismissal Under 8(a) of the Rules Foll. 28 U.S.C. §2255, or in the Alternative, Motion for Summary Judgment was mailed via Certified Mail, Return-Receipt Requested to Juan Hernandez Eguia TDCJ No. 82-56-05, 1313 County Road, La Mesa, Texas 79331. on this the 28th day of MAY, 2002.

MARK M. DOWD
Assistant U.S. Attorney

14

1   IN THE UNITED STATES DISTRICT COURT
    FOR THE SOUTHERN DISTRICT OF TEXAS
2                 BROWNSVILLE DISTRICT

3   UNITED STATES OF AMERICA      X
                                  X
4   VS.                           X   NO. B-00-169
                                  X
5   JUAN EGUIA                    X

6   ─────────────────────────────────────────────

7                    ARRAIGNMENT
    BEFORE THE HONORABLE HILDA G. TAGLE
8                  AUGUST 3, 2000

9   ─────────────────────────────────────────────

10  A P P E A R A N C E S

11     FOR THE GOVERNMENT:

12        MR. JOSE ESQUIVEL
          U.S.A. ASSISTANT ATTORNEY
13        600 E. Harrison Street
          Brownsville, Texas
14
       FOR THE DEFENDANT:
15
          MR. REYNALDO GARZA, III
16        ASST. FEDERAL PUBLIC DEFENDER
          600 E. Harrison Street
17        Brownsville, Texas

18

19

20

21

22

23

24

25                **ORIGINAL**

1          On the 8th day of August, 2000, the above

2   entitled and numbered cause came on before the said

3   HONORABLE COURT, HILDA G. TAGLE, JUDGE, and the following

4   proceedings were had:

5          THE COURT:  I'm going to ask all of you to

6   please raise your right hands so you may be sworn.

7          (Witnesses sworn.)

8          THE COURT:  Please lower your hands.

9          (Proceedings involving other defendants.)

10          EXAMINATION OF MR. EQUIA

11  BY THE COURT:

12      Q.   And what is your name, please?

13      A.   Juan Eguia.

14      Q.   Sir, did you just now take the oath as well?

15      A.   Yes, Your Honor.

16      Q.   Do you understand that you have a right to have

17  your case taken up individually?

18      A.   Yes, Your Honor.

19      Q.   Are you in agreement that it can be taken up

20  with the other ones before the Court this afternoon?

21      A.   Yes.

22          (Proceedings regarding other defendants.)

23          THE COURT:  Now, let me tell you that --

24  now, let me also inquire.  Mr. Canales, is your case one

25  that has a written plea agreement in it?

1           MR. CANALES:  Yes, Your Honor.

2           THE COURT:  Mr. Garza?

3           MR. GARZA:  Yes, Your Honor.

4           (Proceedings in other matters.)

5       SIMULTANEOUS EXAMINATION OF ALL DEFENDANTS

6   BY THE COURT:

7       Q.   All right.  You understand that since you have

8   been placed under oath, if you were to answer any of my

9   questions falsely, your answers may be used against you in

10  another prosecution for perjury for making a false

11  statement.  Do you understand that?

12      A.   (Mr. Eguia) Yes.

13           THE COURT:  All defendants have answered

14  in the affirmative.

15      Q.   And if, at any time, you don't understand a

16  question that I've asked or an explanation that I've

17  given, please tell me and I will repeat it or explain it

18  to you.  Do you understand that?

19      A.   (Mr. Eguia) Yes.

20           THE COURT:  All right.  All defendants

21  have answered in the affirmative.

22      Q.   And just to make sure that there's no

23  confusion, if you'll just wait until I look at you so that

24  you'll know that I'm asking you to respond when I look at

25  you so that you're not jumping into somebody else's

1    comments or questions to the Court.

2              And if, at any time, you want to stop the

3    proceedings to confer privately with your attorney, please

4    let me know and you will be allowed to do so.  Do you

5    understand that?

6        A.   (Mr. Eguia) Yes.

7              THE COURT:  All right.  All defendants have

8    answered in the affirmative.

9              (Proceedings in another matter.)

10             FURTHER EXAMINATION OF JUAN EGUIA

11   BY THE COURT:

12       Q.   And, sir, what is your complete name?

13       A.   Juan Eguia Hernandez.

14       Q.   And Hernandez is your last name?

15       A.   Juan Eguia Hernandez.

16       Q.   Which of those names is your father's name?

17       A.   Eguia.

18       Q.   And have you ever been known by any other name?

19       A.   Just Juan Eguia.

20       Q.   What is your date of birth?

21       A.   5/21/69.

22       Q.   That makes you how old right now?

23       A.   31.

24       Q.   How far did you go in school?

25       A.   GED.

```
 1        Q.   Where did you finish your GED?

 2        A.   (Unintelligible.)

 3        Q.   I'm sorry?

 4        A.   It's the Department of Corrections.

 5        Q.   It was here in the United States?

 6        A.   Yes, ma'am.

 7        Q.   So you're able to read and write and speak and

 8   understand English?

 9        A.   Yes, Your Honor.

10             THE COURT:  And let me also confirm, Mr.

11   Perez-Garcia, are you a citizen of Mexico or the United

12   States?

13             MR. PEREZ-GARCIA:  Mexican.

14        Q.   And, Mr. Eguia, are you a citizen of the United

15   States?

16        A.   U.S. citizen.

17        Q.   Okay.  So you're able to read, write, speak, and

18   understand English?

19        A.   Yes, Your Honor.

20             (Proceedings regarding other defendants.)

21      FURTHER SIMULTANEOUS EXAMINATION OF DEFENDANTS

22   BY THE COURT:

23        Q.   Now, have you ever been treated for any mental

24   illness or addiction to drugs of any kind?

25        A.   (Mr. Eguia) No.
```

1          THE COURT:  All defendants have answered
2    in the negative.
3          Q.   And have you taken any drug, medicine, or
4    intoxicant within the last 24 hours.
5          A.   (By Mr. Perez-Garcia) No, Your Honor.
6          A.   (By Mr. Eguia) Only Motrin.
7          Q.   Mr. Eguia, that's over-the-counter medication;
8    is that correct?  Is it an over-the-counter, or is that
9    prescription?
10         A.   Over the counter.
11         Q.   Okay.  So it's not a drug that's prescribed to
12   you by a physician?
13         A.   No, Your Honor.
14         Q.   And is it anything that affects your ability to
15   think or understand what's going on today?
16         A.   No, Your Honor.
17         Q.   All right.  And, Mr. Galvan, what about
18   yourself?
19         A.   No.
20         Q.   All right.  Have you received a copy of the
21   indictment that's pending against you?  That is, the
22   written charges or accusation the Government has brought
23   against you?
24         A.   (Mr. Eguia) Yes.
25               THE COURT:  All defendants have answered

1    in the affirmative.

2          Q.    And have you fully discussed those charges in

3    this case in general with your attorney?

4          A.    (Mr. Eguia) Yes, Your Honor.

5                THE COURT:  All defendants have answered

6    in the affirmative.

7          Q.    And have you asked your attorney questions

8    about the charges in this indictment and received answers

9    that you've been able to understand?

10         A.    (Mr. Eguia) Yes.

11               THE COURT:  All defendants have answered

12   in the affirmative.

13         Q.    And are you fully satisfied with the advice

14   that your attorney has given you and the explanations that

15   he's provided to you about this case?

16         A.    (Mr. Eguia) Yes, Your Honor.

17               THE COURT:  All defendants have answered

18   in the affirmative.

19               (Proceedings in another matter.)

20               THE COURT:  All right.  Then, Mr. Eguia,

21   you're charged in this indictment with being a convicted

22   felon in possession of a firearm.  Did you understand that

23   that's the accusation against you?

24               THE DEFENDANT:  Yes, Your Honor.

25               THE COURT:  Okay.  So it's only one count.

1       Mr. Esquivel, if you'll read the

2 indictment.

3       MR. ESQUIVEL:  Yes, Your Honor.  "The

4 United States of America versus Juan Eguia also known as

5 Juan Hernandez Eguia.  Indictment.  The Grand Jury charges

6 on or about November 10, 1999, in the Southern District of

7 Texas and within the jurisdiction of the Court, Defendant,

8 Juan Eguia, having been convicted on September 30, 1997,

9 in the 138th District Court, Cameron County, Texas, of the

10 felony offense of Burglary of a Habitation, a crime

11 punishable by imprisonment for a term exceeding one year,

12 did knowingly possess in and affecting commerce, a

13 firearm, namely a F.B. Radom, Model 35, nine millimeter

14 semi-automatic pistol, Serial No. V8810, in violation of

15 Title 18, United States Code, Section 922(g)(1) and

16 924(a)(2)."

17       Mr. Eguia, did you understand the charges

18 as read to you, sir?

19       THE WITNESS:  Yes, sir.

20       MR. ESQUIVEL:  And how do you plead:

21 guilty or not guilty?

22       THE WITNESS:  Guilty, sir.

23       (Proceedings involving other defendants.)

24    FURTHER SIMULTANEOUS EXAMINATION OF DEFENDANTS

25 BY THE COURT:

1   Q.   All right.  Do you understand that you can be
2   found guilty of the offense that you've been charged with
3   in only one of two ways: either by pleading guilty and
4   having the Court accept your plea or by being convicted by
5   a jury in a trial?  Do you understand that?

6   A.   (Mr. Eguia) Yes, Your Honor.

7           THE COURT:  All defendants have answered
8   in the affirmative.

9           (Proceedings involving other defendants.)

10          FURTHER EXAMINATION OF MR. EGUIA

11  BY THE COURT:

12  Q.   All right.  And, Mr. Eguia, I'll ask you
13  whether you understand that a finding of guilty by the
14  Court or by a jury in this case could -- of course, you're
15  pleading guilty, but, anyway, if the Court accepts your
16  plea and finds that you are guilty, the law provides for a
17  punishment of up to ten years' imprisonment.  Did you
18  understand that?

19  A.   Yes, Your Honor.

20  Q.   And, furthermore, the law provides for a finding
21  of up to $250,000.  Did you understand that?

22  A.   Yes, Your Honor.

23  Q.   And upon release from imprisonment, the law
24  further provides for a term of supervised release of up to
25  three years.  Did you understand that?

1      A.    Yes, Your Honor.

2      Q.    And during this period of supervised release,

3  that if you were to violate any condition, the Court could

4  revoke you and you could be sent back to prison.  Did you

5  understand that?

6      A.    Yes, Your Honor.

7      Q.    All right.

8                  (Proceedings involving other defendants.)

9      FURTHER SIMULTANEOUS EXAMINATION OF ALL DEFENDANTS

10 BY THE COURT:

11     Q.    All right.  Do you understand that in addition

12 to any fine that the law obligates you to pay a $100

13 assessment?  Do you understand that?

14     A.    (Mr. Eguia) Yes, Your Honor.

15                  THE COURT:  All defendants have answered

16 in the affirmative.

17     Q.    And, in addition, parole has been abolished,

18 and if you are sentenced to prison, you would not be

19 released early on parole.  Did you understand that?

20     A.    (Mr. Eguia) Yes, Your Honor.

21                  THE COURT:  All defendants have answered

22 in the affirmative.

23                  (Proceedings regarding other defendants.)

24                  FURTHER EXAMINATION

25 BY THE COURT:

1    Q.   I'll proceed with the questions of Mr. Eguia,

2    and I'll ask you, sir, that -- well, Mr. Eguia and Mr.

3    Galvan, do you understand that since the charge pending

4    against you is a felony, a conviction may have additional

5    consequences of depriving you of certain civil rights such

6    as the right to vote, the right to hold public office, the

7    right to sit on a jury, and the right to possess any kind

8    of firearm.  Do you understand that, Mr. Eguia?

9    A.   Yes.

10   Q.   Mr. Galvan?

11   A.   Yes.

12   Q.   All right.  I'm going to ask Mr. Eguia, first of

13   all, these documents that have been signed and filed with

14   the Court, I'll ask you about the signatures on these

15   documents.  I'll show you first the fact summary sheet and

16   ask you whether that's your signature on this line right

17   here?

18   A.   Yes, Your Honor.

19   Q.   And the plea agreement that's attached to that

20   consisting of ten pages.  Is this your signature on this

21   Page 8 that I'm showing you?

22   A.   Yes, Your Honor.

23   Q.   And is this your signature on Page 9 that I'm

24   showing you?

25   A.   Yes, Your Honor.

1    Q.   All right.  Before you signed these two

2  documents, did you review them with your attorney?

3    A.   Yes, Your Honor.

4    Q.   If you had questions about these documents, was

5  he able to explain or give you answers that you were able

6  to understand?

7    A.   Yes, Your Honor.

8    Q.   All right.

9         (Proceedings regarding other defendants.)

10        THE COURT:  Now, I'm going to ask the

11  Government to recite what the agreement is in each one of

12  these cases, beginning with Mr. Perez-Garcia.

13        (Proceedings regarding other defendants.)

14        THE COURT:  All right, then.  Mr.

15  Esquivel, if you'll recite what the agreement is with Mr.

16  Eguia.

17        MR. ESQUIVEL:  Yes, Your Honor.  In

18  exchange for his plea to the indictment, the Government

19  will recommend that he be given full credit for acceptance

20  of responsibility and be sentenced at the lower end of the

21  guideline level and scores.

22        THE COURT:  Mr. Garza, can you tell me

23  whether you discussed those terms with your client?

24        MR. GARZA:  Yes, I did discuss those terms

25  with my client, and that is the agreement that we have.

1      THE COURT:  Do you feel that he understood
2    everything that you told him about those terms and what
3    the obligations are going to be?
4            MR. GARZA:  Yes, I do, Your Honor.  He
5    understands.
6            THE COURT:  All right.
7            Mr. Eguia, will you confirm that that's
8    what you were told by your attorney was going to be the
9    agreement and that you understood the agreement recited,
10   which is the one that I just asked you about?
11           THE DEFENDANT:  Yes, Your Honor.
12           (Proceedings regarding other defendants.)
13        FURTHER SIMULTANEOUS EXAMINATION OF DEFENDANTS
14   BY THE COURT:
15      Q.   Now, do you understand that whatever
16   recommendation the Government has told me that they would
17   be making in exchange for your plea of guilty, that that
18   recommendation is not binding on the Court?  Do you
19   understand that?
20      A.   (Mr. Eguia) Yes, Your Honor.
21           THE COURT:  All defendants have answered
22   in the affirmative.
23      Q.   And have you discussed with your attorney that
24   the sentencing guidelines that are going to be used by the
25   Court in determining the appropriate punishment is going

1   to be something that will be affected by the results of a

2   presentence report that is going to be cleared by the

3   probation department?  Did you understand that?

4        A.    (Mr. Eguia) Yes, Your Honor.

5             THE COURT:  All defendants have answered

6   in the affirmative.

7        Q.    And did you understand that the probation

8   department is going to be reviewing and reporting to the

9   Court facts about your history: that is, your employment

10  history, your criminal history, the facts of this case,

11  and all relevant and related conduct, and it's to findings

12  of fact that the Court will be making -- mostly on the

13  presentence report, but, as well, on any evidence that you

14  wish to provide to the Court, that the findings made by

15  the Court at the time of sentencing will determine what

16  guideline level you will be considered for punishment?

17  Did you understand that?

18       A.    (Mr. Eguia) Yes, Your Honor.

19            THE COURT:  All defendants have answered

20  in the affirmative.

21       Q.    So do you understand that if certain special

22  facts are found or certain law rules apply, the Court is

23  authorized to sentence you above or below the guideline

24  range in which you score but in no event can the

25  punishment be greater than the maximum that is authorized

1    by law?  Do you understand that?

2        A.    (Mr. Eguia) Yes, Your Honor.

3            THE COURT:  All defendants have answered

4    in the affirmative.

5        Q.    And because, again, we don't know what the

6    report is going to say, it's not possible to know what

7    guideline level or what guideline you are going to score

8    in until that report is completed and until the Court

9    makes its findings.  Do you understand that?

10       A.    (Mr. Eguia) Yes, Your Honor.

11           THE COURT:  All defendants have answered

12   in the affirmative.

13       Q.    And if the Court declines to follow the

14   Government's recommendation on any of those terms that

15   you've been told about, that you would not be able to

16   withdraw your plea of guilty on that count.  Do you

17   understand that?

18       A.    (Mr. Eguia) Yes, Your Honor.

19           THE COURT:  All defendants have answered

20   in the affirmative.

21       Q.    Now, is there any promise that the Government

22   has made to you that I've not been told about or is not

23   included in the documents that you signed and filed with

24   the Court?

25       A.    (Mr. Eguia) No, Your Honor.

1           THE COURT:  All defendants have answered

2  in the negative.

3     Q.   And is there any promise that you have made to

4  any agent of the Government that I've not been told about

5  here in court or is not included in the documents that

6  have been signed and filed with the court?

7     A.   (Mr. Eguia) No, Your Honor.

8           THE COURT:  All defendants have answered

9  in the negative.

10     Q.   So do you understand that by pleading guilty

11  today that you are giving up your right to trial before a

12  jury?

13     A.   (Mr. Eguia) Yes, Your Honor.

14           THE COURT:  All defendants have answered

15  in the affirmative.

16     Q.   And, at a trial, you would be presumed to be

17  innocent and could not be found guilty by a jury unless

18  your guilt is proven by the Government beyond a reasonable

19  doubt.  Do you understand that?

20     A.   (Mr. Eguia) Yes, Your Honor.

21           THE COURT:  All defendants have answered

22  in the affirmative.

23     Q.   And at the trial, the Government would be

24  required to present witnesses against you in open court

25  and your attorney would be permitted to ask them

1    questions.  Do you understand that?

2        A.    (Mr. Eguia) Yes, Your Honor.

3               THE COURT:  All defendants have answered

4    in the affirmative.

5        Q.   And you would also be able to present witnesses

6    on your own behalf so your attorney could ask them

7    questions.  Do you understand that?

8        A.    (Mr. Eguia) Yes, Your Honor.

9               THE COURT:  All defendants have answered

10    in the affirmative.

11        Q.   And if the witnesses that you wanted to present

12    in court did not want to come to court to testify

13    voluntarily, they could be forced to come.  Do you

14    understand that?

15        A.    (Mr. Eguia) Yes, Your Honor.

16               THE COURT:  All defendants have answered

17    in the affirmative.

18        Q.   And, at a trial, you could also testify in your

19    own behalf if you wanted to, but you could not be forced

20    to do so against your wishes.  Do you understand that?

21        A.    (Mr. Eguia) Yes, Your Honor.

22               THE COURT:  All defendants have answered

23    in the affirmative.

24        Q.   And if you were to decide not to testify, no

25    one could hold that against you in a trial and the jury

1     would be told that they could not use that as any kind of

2     evidence of guilt or for any other purpose whatsoever.  Do

3     you understand that?

4           A.   (Mr. Eguia) Yes, Your Honor.

5                     THE COURT:  All defendants have answered

6     in the affirmative.

7           Q.   And so by pleading guilty, you give up your

8     rights to a trial and all rights that I've inquired about.

9     Do you understand that?

10          A.   (Mr. Eguia) Yes, Your Honor.

11                    THE COURT:  All defendants have answered

12    in the affirmative.

13                    (Proceedings regarding other defendants.)

14                    THE COURT:  All right.  And in Cause

15    00-CR-169, Mr. Esquivel, if you would recite what the

16    witnesses would testify to if called to trial.

17                    MR. ESQUIVEL:  Yes, Your Honor.  If called

18    upon to do so, the facts will show on or about November

19    10, 1999, Defendant, Juan Eguia, was charged for public

20    intoxication by a Brownsville police officer, R. Aguilar;

21    that he was found asleep behind the wheel of a vehicle.

22    The defendant was found in possession of a loaded F.B.

23    Radom, Model 35, nine millimeter semi-automatic pistol,

24    Serial No. V8810.

25                    The Defendant was convicted on September

1    30, 1997, in the 138th Judicial District Court of

2    Brownsville, Texas, in Cause No. 97-CR-766-B for burglary

3    of a habitation, a crime punishable by imprisonment for a

4    term exceeding one year.

5                    The firearm was manufactured outside the

6    State of Texas.

7                    THE COURT:  All right.

8                    FURTHER EXAMINATION OF MR. EGUIA

9    BY THE COURT:

10        Q.    Mr. Eguia, is there anything about that version

11    of the testimony that you disagree with?

12        A.    No, Your Honor.

13        Q.    Anything you wish to add?

14        A.    No, Your Honor.

15                    THE COURT:  All right.

16        (Proceedings in other matters.)

17                    FURTHER EXAMINATION OF MR. EGUIA

18    BY THE COURT:

19        Q.    In Cause 00-CR-169, Mr. Eguia, knowing and

20    understanding the charges in this indictment and having

21    conferred with your attorney and having received his

22    advice and counsel and knowing the maximum penalty that

23    can be imposed and all consequences of a guilty plea and

24    knowing of your right to a trial and the rights associated

25    with a trial and knowing how the sentence will be

1    determined, how do you wish to plea to this indictment:

2    guilty or not guilty?

3        A.    Guilty, Your Honor.

4        Q.    And are you pleading guilty freely and

5    voluntarily?

6        A.    Yes, Your Honor.

7        Q.    Has anyone exerted any force or pressure on you

8    in order to get you to plead guilty?

9        A.    No, Your Honor.

10        Q.    And am I correct in believing that the reason

11    you're pleading guilty is because what the Government just

12    recited as the evidence is, in fact, true?

13        A.    Yes, Your Honor.

14            THE COURT:  Then, Mr. Garza, any question

15    you wish for me to ask your client?

16            MR. GARZA:  No, Your Honor.

17            THE COURT:  As far as you understand, have

18    I complied with all the requirements of Rule 11?

19            MR. GARZA:  Yes, Your Honor.

20            THE COURT:  Mr. Esquivel?

21            MR. ESQUIVEL:  No, question, Your Honor,

22    and, yes, you have complied.

23            THE COURT:  Very well.  In Cause No.

24    00-CR-169, the Court finds that the Defendant, Juan Eguia

25    Hernandez, is fully competent and capable of entering an

1   informed plea, that he is aware of the nature and

2   consequences of his plea, and that his plea of guilty is a

3   knowing and voluntary plea to the Court supported by an

4   independent basis in fact containing each of the essential

5   elements of the offense charged in the indictment.

6   Therefore, I find that he is guilty of the offense of

7   being a convicted felon in possession of a firearm as

8   alleged in this indictment.

9          All right, Counsel, you can stand aside.

10          (Proceedings in other matters.)

11          THE COURT:  Okay.  These cases will be

12   referred to the probation department for a presentence

13   report which is ordered prepared by September the 22nd

14   with opportunity to object thereafter, and a sentencing

15   hearing is scheduled for November 9, 2000, at 9:00

16   o'clock.

17          So, Counsel, in these cases, if there's

18   nothing further, you'll be in recess.

19          (Proceedings in this matter concluded.)

20

21

22

23

24

25

1    STATE OF TEXAS      *

2    COUNTY OF CAMERON *

3              I, GENIE L. SMITH, Certified Shorthand Reporter

4    for the State of Texas, do hereby certify that the

5    foregoing pages constitute a full, true, and correct

6    transcription of the proceedings had in the

7    above-captioned cause; thereafter, reduced to typewritten

8    form by me and under my supervision.

9              WITNESS MY OFFICIAL SIGNATURE on this the 9th

10   day of April, 2002.

11

12

13

14   GENIE L. SMITH, CSR 6186
     Certification Expires: 12/31/2002

15

16

17

18

19

20

21

22

23

24

25

```
 1                 IN THE UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF TEXAS
 2                       BROWNSVILLE DIVISION

 3   _____
                                    )
 4   UNITED STATES OF AMERICA       )
                                    )  CRIMINAL ACTION NO.
 5   VS.                            )  B-00-169
                                    )
 6   JUAN EGUIA                     )
     _____)
 7

 8

 9                      SENTENCING PROCEEDINGS
               BEFORE THE HONORABLE HILDA G. TAGLE
10                      NOVEMBER 13, 2000

11   APPEARANCES:

12   For the Government:        MRS. ADELA KOWALSKI-GARZA
                                Assistant United States Attorney
13                              Brownsville, Texas

14   For the Defendant:         MR. REYNALDO GARZA, III
                                Attorney at Law
15                              Brownsville, Texas

16   Transcribed by:            BRECK C. RECORD
                                Official Court Reporter
17                              600 E. Harrison, Box 16
                                Brownsville, Texas  78520
18                              (956)548-2510

19

20

21

22

23

24

25
```

Captured and Transcribed by Computer - Eclipse

1          THE COURT:  00-CR-169-01, the United States of America

2   versus Juan Eguia.   What says the Government?

3          AUSA GARZA:  Adela Garza for the Government, present and

4   ready, Your Honor.

5          THE COURT:  What says the Defendant?

6          MR. GARZA:  Reynaldo Garza for the Defendant, Your

7   Honor, present and ready.

8          THE COURT:  And are there any objections?

9          MR. GARZA:  None, Your Honor.

10     (At this time other cases were heard at which time the

11   following occurred, to wit:)

12          THE COURT:  All right.  Let me now have Juan Eguia,

13   Mr. Garza.  If you will come forward with your client and please

14   indicate whether there are any -- whether you have reviewed the

15   presentence report with your client and whether there are any

16   objections?

17          MR. GARZA:  Your Honor, we reviewed the presentence

18   report together and there are no objections.

19          THE COURT:  Sir, would you please button your shirt?

20   So, does he have any probation?  I wasn't clear.

21          MR. GARZA:  There's no outstanding probation, Judge.

22   He's currently serving a two-year state jail felony for burglary

23   of a building.  That sentence was imposed prior to this case

24   being filed.

25          THE COURT:  Okay.


                Captured and Transcribed by Computer - Eclipse

1          MR. GARZA:  And he was in custody at the time that this

2    case was begun.

3          THE COURT:  He was in custody?  Well, then what was he

4    doing out in the free world?

5          MR. GARZA:  Judge, the possession of a firearm occurred

6    before he was arrested for burglary of a building and the state

7    originally picked up that case.  He went through the state

8    system for his burglary of a building, pled, and was sentenced

9    in the 107th District Court.  While he was pending -- at the

10   time the felony possession of a firearm case was pending and the

11   United States government picked up on it a few months later and

12   began the process in this case.  So, he was in custody the whole

13   time.

14         THE COURT:  So, he's also under parole supervision by

15   state for the burglary of a habitation in the 138th?

16         MR. GARZA:  Yes, he is, Judge.

17         THE COURT:  And he has a theft by possession still

18   pending or what?

19         MR. GARZA:  No, Judge.  Theft by possession is no longer

20   pending, I believe, Judge.

21         THE COURT:  I'm looking at paragraph nine -- I'm sorry,

22   Paragraph 28 on Page 9 that says theft was part of the offense

23   committed.  Okay.  00-246.  Was that the -- that was the

24   burglary of a building.  Okay.

25         MR. GARZA:  That's correct, Judge.

Captured and Transcribed by Computer - Eclipse

1          THE COURT:  All right.  Sir, is there anything you wish

2    to say to The Court before you're sentenced?

3          THE DEFENDANT:  I'd like to say I'm sorry to my family

4    and to the U.S. government for being in this courtroom.  And I

5    would like to request if I could be sent to a south Texas

6    prison.  I got a disabled child, so they can go see me, and my

7    time can be run concurrent with the federal time.

8          THE COURT:  Has there been discussion between you and

9    the Government, Mr. Garza, on that issue?

10         MR. GARZA:  Judge, the probation office is recommending

11   that he be run concurrent and I believe the report indicates

12   that.  And that is the case in the 107th, burglary of a

13   habitation.

14         THE COURT:  Okay.  Very well then.  Pursuant to the

15   Sentencing Reform Act of 1984, you are hereby sentenced to a

16   term of imprisonment of 78 months.  Upon release from

17   imprisonment, you shall be placed on supervised release for a

18   term of three years.  During this period of supervised release,

19   you shall comply with all standard and mandatory conditions of

20   supervised release which shall include that you are not to

21   commit another federal, state or local crime and shall comply

22   with the additional condition that you are not to possess a

23   firearm or destructive device, and you are to participate in a

24   program, inpatient or outpatient, for the treatment of drug

25   and/or alcohol addiction.

                Captured and Transcribed by Computer - Eclipse

1        The Court finds that you do not have an ability to pay a

2   fine and therefore waives the imposition of a fine.  However,

3   The Court does impose a special assessment of $100.

4        And this sentence is ordered to run concurrent with the

5   sentence in 00-CR-246-A, the state conviction.  But, wait a

6   minute, I understood that he was on parole for --

7        MR. GARZA:  There's a burglary of a habitation and

8   burglary of a building, Judge.

9        THE COURT:  So he's on supervision also in 97-CR-766

10  right now?

11       THE DEFENDANT:  I'm on parole right now.

12       THE COURT:  That's what I thought.

13       THE DEFENDANT:  On parole and I got a two-year sentence

14  for a burglary of a building, state jail.  I got parole with TDC

15  and a state jail felony.

16       THE COURT:  Wait a minute.  I don't know how that runs.

17  He's on parole.  I'll leave that one alone.  All right.

18       Sir, this sentence is in conformance with the Sentencing

19  Reform Act of 1984 and as justification for this sentence The

20  Court adopts the findings in the Presentence Investigation

21  Report.

22       The law does provide that you have a right to appeal your

23  sentence and you can do so even though you are indigent, but you

24  must give notice of that intention within 10 days.

25       And I'm not sure that I indicated that, but The Court is

                    Captured and Transcribed by Computer - Eclipse

1    recommending placement in a south Texas prison.

2             MR. GARZA:  Thank you.

3             THE COURT:  We're in recess.  Mr. Garza, you are

4    excused.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Captured and Transcribed by Computer - Eclipse

1    UNITED STATES DISTRICT COURT        *

2    SOUTHERN DISTRICT OF TEXAS          *

3        I, BRECK C. RECORD, Official Court Reporter, United States

4    District Court, Southern District of Texas, do hereby certify

5    that the foregoing is a correct transcript from the record of

6    proceedings in the above-entitled matter.

7        I certify that the transcript fees and format comply with

8    those prescribed by the Court and Judicial Conference of the

9    United States.

10

11   _4/5/02_                    _Breck Record_
                                 BRECK C. RECORD,
12                               Official Court Reporter
                                 United States District Court
13                               Southern District of Texas

14

15

16

17

18

19

20

21

22

23

24

25

                Captured and Transcribed by Computer - Eclipse

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>     Respondent–Plaintiff | §<br>§<br>§ | |
| vs. | §<br>§ | CA B–01–187 |
| JUAN HERNANDEZ EGUIA,<br>     Petitioner–Defendant<br>  ( CR B–00–169) | §<br>§<br>§ | |

## ORDER

The Court, having considered Eguia's motion to vacate sentence and the Government's response, concludes that dismissal of the cause is warranted.

Eguia has failed to overcome the jurisdictional burden of demonstrating cause for failure to pursue his claim on direct appeal. Eguia fails to demonstrate any prejudice as a result of the complained of deficiencies or his actual innocence. Eguia fails to show his attorney's performance was deficient or that he suffered any prejudice therefrom. Even if the merits were reached, the record refutes the substance of each of his claims.

Therefore, Eguia's motion should be DISMISSED in its entirety.

DONE on this the _____ day of _____, 2002 at Brownsville, Texas.

_____
FELIX RECIO
UNITED STATES MAGISTRATE JUDGE
